Naomi Spector (SBN 222573)
Email: nspector@kamberlaw.com
**KAMBERLAW, LLP**
1501 San Elijo Road South, Ste.104
San Marcos, CA 92078
Phone: 310.400.1053
Fax: 212.202.6364

Counsel for Plaintiff Anthony Moreno, and the
putative Classes

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

CASE NO.  '20 CV 1446 JM   BGS

**ANTHONY MORENO,**
**individually, and on behalf of others**
**similarly situated,**

                              **Plaintiff,**

        **vs.**

**VI-JON, INC.**

                **Defendant.**

**CLASS ACTION COMPLAINT FOR:**

**1.  UNFAIR AND UNLAWFUL BUSINESS ACTS AND PRACTICES (CAL. BUS & PROF. CODE §17200 ET SEQ.);**
**2.  DECEPTIVE ADVERTISING PRACTICES (CAL. BUS & PROF. CODE §§ 17500, ET SEQ.);**
**3.  CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, ET SEQ.);**
**4.  BREACH OF EXPRESS WARRANTY; AND**
**5.  QUASI-CONTRACT.**

**DEMAND FOR JURY TRIAL**

    Plaintiff Anthony Moreno on behalf of himself and others similarly situated, by and through his undersigned counsel, hereby files this Class Action Complaint against Defendant Vi-Jon, Inc. and states as follows:

**CLASS ACTION COMPLAINT**

## NATURE OF THE ACTION

1.     Never has it been more saliently demonstrated that consumers rely on hand sanitizers to "kill germs" on their hands in order to protect themselves from infection.  And never has it been more important that manufacturers disseminate accurate and truthful information to the consuming public about the limitations of those products to "kill germs" or, more precisely, denature certain microbes that can cause infection.

2.     Defendant Vi-Jon, Inc. manufactures, advertises and labels numerous hand sanitizing products sold under store brand names, including the following brands: (i) CVS Health, (ii) equate (Walmart), (iii) germ-x, and (iv) Walgreen Co. (collectively the "Products").[1]

3.     Each of the Products state on the front-facing, primary display panel that it kills 99.99% of germs (the "Representation").[2]

4.     "Germs" is a commonly understood term as an organism that causes disease.

5.     The Products, however, do not "kill" 99.99% of the organisms that cause disease.

6.      The Products are substantially ineffective against certain microbes, including certain non-enveloped viruses (for example, norovirus), protozoa (for example, the microbe that causes toxoplasmosis), and bacterial spores (for example, the organism that causes the gastric condition, C. difficile).

---

[1] The Products are sold in various sizes, scents and variations.  This action includes in the definition of Products all sizes, scents and variations of the Products that bear the "kills 99.99% of germs", "kills more than 99.99% of germs" and "kills 99.99% of harmful germs" representation on the primary display panel.

[2] Specifically and variously, the CVS products state "kills 99.99% of germs" and "KILLS 99.99% OF HARMFUL GERMS"; the equate products state "KILLS 99.99% OF GERMS"; the germ-x products state "kills more than 99.99% of germs"; and the Walgreen products state "kills 99.99% of germs" and "kills more than 99.99% of germs".

**CLASS ACTION COMPLAINT**

7.   The microbes, or "germs," for which the Products are ineffective comprise more than .01% of germs.  Accordingly, the uniform, material Representation that the Products kill 99.99% of germs is false and misleading, and Defendant omits material information concerning the limitations of the Products in making the Representation.

8.   The Products, for example, are generally ineffective at killing norovirus which, according to the Center for Disease Control ("CDC"), accounts for approximately 50% of all outbreaks of food- related illness in the United States.

9.   According to the CDC, each year on average in the United States, norovirus causes 19 to 21 million cases of vomiting and diarrhea illness, including 2,270,000 outpatient clinic visits (mostly in young children), 465,000 emergency room visits (mostly in young children), 109,000 hospitalizations, and 900 deaths (mostly in adults 65 and older).

10.   According to the CDC, hand washing with soap and water is more effective than hand sanitizer at removing certain kinds of germs, including norovirus. In fact, the CDC's norovirus expert acknowledged that norovirus is resistant to many common disinfectants.  The CDC recommends using bleach to kill norovirus.

11.   The reason for this limitation is straightforward—norovirus has a structure known as a capsid—a protein shell—which alcohol cannot readily penetrate.  Because the active ingredient in each of the Products is ethyl alcohol, the Products are ineffective against norovirus.

12.   Norovirus alone renders the Representation that the Products kill 99.99% of germs false and misleading.  Yet, it is not the only microbe for which the Products are ineffective.

13.   As described herein, the Products are also generally ineffective against numerous organisms that cause disease, including poliovirus, polyomavirus, hand foot and mouth disease virus, human papillomavirus ("HPV"), cryptosporidium, enterococci and hepatitis A.

14. Furthermore, each classification of virus or microbe has numerous different types or strains of "germs" that cause disease. For example, there are approximately 25 different strains of norovirus that affect humans, and more than 100 different types of HPV.

15. The U.S. Food and Drug Administration has deferred any rulemaking on whether the active ingredient in the Products, ethyl alcohol is generally recognized as safe or generally recognized as effective for use in consumer antiseptic rubs, because it determined that additional safety and effectiveness data is needed.

16. Accordingly, the Products have a nonmonograph status, meaning that they are not generally accepted as over-the-counter-drugs and thus are not approved for marketing or labeling under any monograph.[3] Without approval as over-the-counter-drugs and monograph status, there is no generally accepted FDA language for labeling and marketing the Products.

17. To be clear, Plaintiff does not bring this action pursuant to any FDA rule or regulation, but rather under the applicable consumer protection and common law, which require that Defendant truthfully and accurately label the Products. Specifically, Plaintiff brings this action based on Defendant's false and misleading representation that the Products "kill" "99.99% of germs" and failure to disclose the limitations of the Products to denature certain microbes that cause disease.

18. Plaintiff brings this action on behalf of himself and all others similarly situated to recover damages for Defendant's false, deceptive, and misleading conduct. Plaintiff also brings this action to enjoin Defendant's unlawful conduct and to require that Defendant truthfully and accurately label the Products. Plaintiff seeks damages, reasonable attorneys' fees and costs, and disgorgement of all benefits Defendant has enjoyed from its unlawful and/or deceptive business practices, as detailed herein. Plaintiff makes these allegations based on his personal knowledge as to himself and his

[3] A monograph is described by the FDA as "a kind of 'recipe book' covering acceptable ingredients, doses, formulations, and labeling in over-the-counter drugs.

**CLASS ACTION COMPLAINT**

own acts and observations and, otherwise, on information and belief based on investigation of counsel.

## JURISDICTION AND VENUE

19.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed classes; (2) members of the proposed classes have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

20.    This Court has personal jurisdiction over Defendant because Defendant's contacts with the forum are continuous and substantial, and Defendant intentionally availed itself of the markets within California through the sale and distribution of the Products in California and through the privilege of conducting business in California.

21.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant engages in continuous and systematic business activities within the State of California.  Moreover, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district.  *See also* Declaration of Anthony Moreno Regarding Venue Pursuant to Cal. Civ. Code § 1780(d), attached hereto as Exhibit A.

## PARTIES

22.    Plaintiff Anthony Moreno is a resident of San Diego, California who purchased the Products during the class period, as described herein.  Plaintiff's claim is typical of all Class members in this regard.  In addition, the advertising and labeling on the package of the Products purchased by Plaintiff, including the Representation, is typical of the advertising, labeling and Representation of the Products purchased by members of the Classes.

23.    Defendant Von-Jon, Inc. is a Missouri corporation with its principal place of business in Saint Louis, Missouri.  Defendant and its agents manufacture, market, distribute, label, promote, advertise and sell the Products.  At all times material hereto Defendant was conducting business in the United States, including in California, through

**CLASS ACTION COMPLAINT**

its services as a manufacturer and supplier to various stores in California and by, among other things, maintaining agents for the customary transaction of business in California.

24.    Defendant and its agents promoted, marketed and sold the Products at issue in this jurisdiction and in this judicial district.  The unfair, unlawful, deceptive, and misleading advertising and labeling of the Products was prepared and/or approved by Defendant and its agents, and was disseminated by Defendant and its agents through labeling and advertising containing the misrepresentations and omissions alleged herein.

## FACTUAL ALLEGATIONS

### A.    Defendant Manufacture, Label and Advertise the Products

25.    Defendant manufactures, labels, advertises, and sells the Products.

26.    The following images depict the Products' primary display panels:



**CLASS ACTION COMPLAINT**





27.    In addition to the Primary Display Panel Representation, Defendant uniformly states on the back-panel labels of the Products that they are "Effective at eliminating more than 99.99% of many common harmful germs & bacteria in as little as 15 seconds."

**B.    The Products Do Not Kill 99.99% of Germs**

28.    The Primary Display Panel Representation that the Products kill 99.99% of germs is false and misleading.

29.    "Germs" is defined by Merriam-Webster as, among other things, "*especially*: a microorganism causing disease".

30.    On information and belief, Defendant has not conducted efficacy studies, or scientifically valid and accurate studies, on *all* germs in order to substantiate its Representation that the Products kill 99.99% of germs.

**CLASS ACTION COMPLAINT**

31.    Furthermore, the Products do not "kill" certain germs, which comprise more than .01% of "germs" and more than .01% of "harmful germs."

32.    The active ingredient in the Products, ethyl alcohol, cannot readily denature certain microbes.  Although most alcohol-based hand sanitizing rubs ("ABHS") can inactivate enveloped viruses, which are sensitive to alcohol, non-enveloped viruses and microbes with a hard protein shell are far more difficult to denature using ABHS.

33.    Non-enveloped viruses are composed of dense genetic material that is tightly packed with proteins and difficult to disrupt.

34.    The ineffectiveness of the Products against certain microbes is compounded by the condition of the hands on which the microbes are found.  ABHS may be ineffective where hands are dirty, grimy or greasy.

35.    In addition, the effectiveness of ABHS is reduced based on the Products' use directions, which require only a single application on the hands "until dry."  This short exposure time is insufficient to inactivate certain microbes, particularly because ethyl alcohol evaporates quickly.

36.    The Products are substantially ineffective at killing each of the disease-causing agents listed below, including common microorganisms:

37.    ***Norovirus***.  As stated above, norovirus causes substantial infection in the United States each year and is the most common food-borne illness.

38.    There are approximately 25 different strains of norovirus that affect humans.

39.    According to the CDC, hand washing is more effective than ABHS at "killing" norovirus.

40.    An article published by the Canadian Medical Association states that ABHS may actually increase the risk for outbreaks of norovirus.  Based on a survey of long-term care facilities in the United States, presented at an American College of Preventative Medicine meeting, facilities that experienced norovirus outbreaks were

**CLASS ACTION COMPLAINT**

six times more likely to use hand sanitizers equally or more than soap and water for routine hand hygiene.  While the study also recognizes that the design of the survey precludes a causal link between hand sanitizer use and norovirus outbreak, it also cites to evidence that ABHS are "often ineffective against nonenveloped viruses, including norovirus."

41.    A study published by the American Society for Microbiology, Applied and Environmental Microbiology, found that ABHS "may be relatively ineffective against the [human norovirus], reinforcing the need to develop and evaluate new products against this important ground of viruses."

42.    A 2009 study from Applied Environmental Microbiology titled "Effectiveness of Liquid Soap and Hand Sanitizer Against Norwalk Virus on Contaminated Hands" concluded that "alcohol-based hand sanitizer was relatively ineffective, reducing the genomic copies of NV cDNA by only 0.14 to 0.34 log(10) compared to baseline."  The study found, "[d]espite the promise of alcohol-based sanitizers for the control of pathogen transmission, they may be relatively ineffective against the HuNoV, reinforcing the need to develop and evaluate new products against this important group of viruses."

43.    **Poliovirus.**  There are three different types of poliovirus, types 1, 2 and 3, each of which have a slightly different capsid protein.

44.    Like norovirus, poliovirus contains a protein load that is not denatured by ethyl alcohol.

45.    In various studies, application of 70% ethanol to non-enveloped poliovirus had no effect on the virus, even after an extended period of time.

46.    **Polyomavirus.**  Polyomavirus is a nonenveloped virus, which primarily causes severe infection in immune compromised individuals.  There are numerous types of polyomaviruses.

47.    ABHS at 80% ethanol has been found to be ineffective against polyomavirus.

**CLASS ACTION COMPLAINT**

48. **_Hand Foot and Mouth Disease Virus ("HFMD")_**. HFMD is caused by the human enterovirus and primarily affects children, although it can also cause infection (sometimes serious) in adults.

49. According to a study released by Thymos London, ABHS at 70% concentration of ethyl alcohol is largely ineffective against HFMD. 95% ethanol is the most effective concentration against HFMD but, even at that strength—which is far greater than the concentration found in the Products—alcohol still does not fully inactivate the virus.

50. **_Human Papillomavirus ("HPV")._** There are more than 100 varieties of HPV, some of which cause common warts on the hands and fingers. HPV is transmitted primarily through skin-to-skin contact, including by contact with someone who is carrying the virus on their hands or fingers or by touching something that someone else touched who carried HPV on their hands. A study published by Science Daily states that individuals with current genital infections of HPV also have high levels of HPV DNA on their fingers.

51. Numerous publications, including a study published in the Journal of Antimicrobial Chemotherapy, find that HPV is resistant to alcohol-based disinfectants.

52. **_Cryptosporidium_**. Cryptosporidium is a genus of protozoan pathogens, which include the giardia parasite and the parasite that causes toxoplasmosis. There are at least 16 established cryptosporidium, at least eight of which have been reported in humans.

53. The pathogen causing toxoplasmosis is commonly found in cat litter and undercooked food and is one of the most common parasitic infections in the world, which may be responsible for approximately 40 million infections in the United States.

54. Cryptosporidium are responsible for gastrointestinal symptoms, including vomiting and diarrhea. Cryptosporidiosis is the most common cause of recreational water illness outbreaks in the United States. According to the CDC, outbreaks of cryptosporidium increased an average of 13% each year from 2009 to 2017.

11

**CLASS ACTION COMPLAINT**

55. According to the CDC, "[a]lcohol-based hand sanitizers do not effectively kill cryptosporidium." This is because cryptosporidium is protected by an outer shell that makes it very difficult to kill. Cryptosporidium can, for example, survive for many days in chlorinated water in pools and on surfaces disinfected with chlorine bleach.

56. ***Enterococci***. Enterococcal bacteria are responsible for infections that affect the digestive tract, bladder, heart and other parts of the body and globally make up ten percent of all bacterial infections acquired in a hospital setting. There are at least 18 different species of enterococcal bacteria. In North American and Europe enterococci are a leading cause of sepsis, a fatal blood infection.

57. A 2018 study published by Science Translational Medicine found that, as hand sanitizer use increased in hospital settings, the number of enterococcal infections also increased. One explanation for the increase is that enterococci are becoming increasingly tolerant of alcohol-based hand sanitizers. Although, at the time of the study the bacteria were generally denatured by a 70% alcohol concentration, alcohol resistance is increasing over time. Bacteria collected after 2009, for example, were ten times more resistant to alcohol than pre-2004 bacteria. The study concludes that certain bacteria should be addressed with simple hand washing, rather than application of alcohol-based hand sanitizer.

58. ***Hepatitis A***. Hepatitis A is a contagious infection, which causes (among other things) fatigue, nausea and vomiting, joint pain, jaundice and liver damage. Hepatitis A is commonly spread by close contact with an infected individual, through food or drink, and through shellfish harvested from contaminated water. Hepatitis A outbreaks occur sporadically throughout the United States. In 2017, for example, San Diego county experienced a serious outbreak of hepatitis A.

59. According to numerous publications, including the Population Health Division of the San Francisco Department of Public Health, Disease Prevention & Control, ABHS does not kill the hepatitis A virus.

**CLASS ACTION COMPLAINT**

60.    ***Influenza A.***  Although controversial, a 2019 study from researchers at the Kyoto Prefectural University of Medicine found that ethanol-based hand sanitizers would have to be in contact with the influenza A (flu) virus for at least four minutes before killing it.  "The reason ethanol-based disinfectants might not be as useful as previously thought has to do with the mucus that surrounds droplets of the influenza A virus. The mucus acts as a hydrogel and protects the virus from the ethanol, the investigators reported."  Furthermore, the researchers found that, unlike sanitizer, "[e]ven hand washing without soap is effective against influenza viruses. Of course, hand washing with soap is also effective, and further increases in disinfection effects are expected."

61.    Evaluated alone or collectively, the Products are ineffective against more than .01% of "germs" and therefore the uniform Representation that they kill 99.99% of germs is false and misleading.

62.    This action is brought pursuant to consumer protection law and the common law, based on the false and misleading label representations, and not based on any FDA regulation.

63.     By way of background, however, it should be noted that in 2019, the FDA issued a Final Rule wherein it deferred any regulatory action for three consumer antiseptic rub ingredients, including ethyl alcohol.

64.    The FDA deferred making a monograph or nonmonograph finding for these ingredients and stated that the status would be addressed "after completion and analysis of studies to address the safety and effectiveness data gaps of these ingredients or at another time, if these studies are not completed."  Furthermore, the FDA stated that it was deferring a ruling on whether the ingredients, including ethyl alcohol, are generally recognized as safe and effective ("GRAS/GRAE").

65.    Accordingly, the Products do not have monograph status, nor has the active ingredient—ethyl alcohol—been found to be GRAS/GRAE.

**C.    Plaintiff and Consumers Purchased the Products to Their Detriment**

66.    Plaintiff and consumers purchased the Products to their detriment.

67.    Plaintiff purchased each of the branded Products one or more times during the class period, including in or around late 2019 and early 2020.  Plaintiff purchased the Products for personal and family use.  The price paid by Plaintiff was representative of the price paid by similarly situated consumers who purchased the Products.   In addition, the Representation on the Products purchased by Plaintiff was the same as the Representation purchased by members of the Class.

68.    In purchasing the Products, Plaintiff relied on Defendant's Representation that the Products kill 99.99% of germs.

69.     Defendant knew or should have known that reasonable consumers would consider the Representation material in deciding to purchase the Products.  Accordingly, Defendant's Representation is false, misleading and reasonably likely to mislead reasonable consumers.

70.    At the time Plaintiff purchased the Products, Plaintiff did not know, and had no reason to know, that the Representation was false, misleading and deceptive.  Plaintiff would not have purchased the Products, or would have purchased them on different terms, if he had known the truth.

71.    It is possible, however, that Plaintiff would purchase the Products in the future if the label representations were truthful and accurate.

## CLASS DEFINITION AND CLASS ALLEGATIONS

72.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself, on behalf of all others similarly situated, and as a member the Classes defined as follows (collectively, the "Class"):

> All citizens of the United States who, within the relevant statute of limitations periods, purchased Defendant's Products ("Nationwide Class");

**CLASS ACTION COMPLAINT**

All citizens of California who, within four years prior to the filing of the initial Complaint, purchased Defendant's Products ("California Subclass").

73.    Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has a controlling interest; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

74.    Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

75.    This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

76.    **Numerosity**:  Members of the Class are so numerous that joinder of all members is impracticable.  Upon information and belief, the Nationwide Class consists of millions of purchasers dispersed throughout the United States, and the California Subclass consists of hundreds of thousands of purchasers throughout the State. Accordingly, it would be impracticable to join all members of the Class before the Court.

77.    **Common Questions Predominate:**  There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues.  Included within the common questions of law or fact are:

- Whether the Product Representation and omissions are, or any single representation or omission is, false, misleading and/or deceptive;
- Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

**CLASS ACTION COMPLAINT**

- Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq.*; Cal. Bus. & Prof. Code § 17500, *et seq.*; and/or the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*;

- Whether Defendant committed a breach of express warranty;

- Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

- Whether Plaintiff and the Class have sustained damage as a result of Defendant's unlawful conduct;

- The proper measure of damages sustained by Plaintiff and the Class; and

- Whether Defendant was unjustly enriched by its unlawful practices.

78.    **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class he seeks to represent because Plaintiff, like the Class members, purchased Defendant's misbranded Products.    Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.    Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct.    Plaintiff's and Class member's claims arise from the same practices and course of conduct and are based on the same legal theories.

79.    **Adequacy:** Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the members of the Class Plaintiff seeks to represent.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

80.    **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.   The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

b.   Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

c.   Given the size of individual Class members' claims, few, if any, members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent members have no substantial interest in individually controlling the prosecution of individual actions;

d.   When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.   This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the Class can seek redress for the harm caused to them by Defendant.

81.   Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

82.   The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

83.   The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are also met as questions of law or fact common to Class members predominate

**CLASS ACTION COMPLAINT**

over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

84.    Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Unfair and Unlawful Business Acts and Practices**
**(Business and Professions Code § 17200, *et seq.*)**
**(*for the California Subclass*)**

85.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

86.    Defendant's conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, *et seq.* (the "UCL").  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

87.    Plaintiff brings this claim seeking equitable and injunctive relief to stop Defendant's misconduct, as complained of herein, and to seek restitution of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices described herein.

88.    Defendant's knowing conduct, as alleged herein, constitutes an "unfair" and/or "fraudulent" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

89.    Defendant's conduct was and continues to be unfair and fraudulent because, directly or through its agents and employees, Defendant made uniform materially false representations and omissions.

90.    As described herein, Defendant made the false and misleading Representation that the Products kill 99.99% of germs.

18

91.    As described herein, Defendant made omissions of material fact concerning the limitations of the Products to "kill" certain "germs."

92.    Defendant was and is aware that the representations and omissions it has made about the Products were and continue to be false and misleading.

93.    Defendant had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in its practices related to the labeling and advertising of the Products.

94.    There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

95.    Defendant's misrepresentation of material facts, as set forth herein, also constitute an "unlawful" practice because they violate California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770 and the laws and regulations cited herein, as well as the common law.

96.    Defendant's conduct in making the Representation and omissions described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors.  This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

97.    Moreover, Plaintiff and members of the California Subclass could not have reasonably avoided such injury.  Defendant's uniform, material misrepresentations and omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its misrepresentations and omissions were untrue and misleading.

98.    Plaintiff purchased the Products in reliance on the Representation made by Defendant, including that the Products' labeling was accurate as alleged herein, and without knowledge of Defendant's misrepresentations and omissions.

99.    Plaintiff and members of the California Subclass have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the

19

**CLASS ACTION COMPLAINT**

monies paid to Defendant for the Products, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and California Subclass members.

100.    As a result of the business acts and practices described above, Plaintiff and members of the California Subclass, pursuant to § 17203, are entitled to an Order enjoining such future wrongful conduct on the part of Defendant and such other Orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

101.    Pursuant to Civil Code § 3287(a), Plaintiff and the California Subclass are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct.  The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the California Subclass are entitled to interest in an amount according to proof.

## SECOND CAUSE OF ACTION
### Deceptive Advertising Practices
### (California Business & Professions Code §§ 17500, *et seq.*)
### (*for the California Subclass*)

102.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

103.    California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising . . . ."

104.    Defendant violated § 17500 when it represented, through its false and misleading Representation and omissions, that the Products possessed characteristics and value that they did not actually have.  As described herein, Defendant made the false and misleading Representation that the Products kill 99.99% of germs.

105.    Defendant's deceptive practices were designed to induce reasonable consumers like Plaintiff to purchase the Products.  Defendant's uniform, material misrepresentations and omissions regarding the Products were likely to deceive, and

**CLASS ACTION COMPLAINT**

Defendant knew or should have known that its uniform misrepresentations and omissions were untrue and/or misleading. Plaintiff purchased the Products in reliance on the Representation made by Defendant, including that the Product labeling was accurate as alleged herein, and without knowledge of Defendant's misrepresentations and omissions.

106. Plaintiff and members of the California Subclass have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Products, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Subclass members.

107. The above acts of Defendant were and are likely to deceive reasonable consumers in violation of § 17500.

108. In making the statements and omissions alleged herein, Defendant knew or should have known that the statements and representations were untrue or misleading, and acted in violation of § 17500.

109. Defendant continues to engage in unlawful, unfair and deceptive practices in violation of §17500.

110. As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500, Plaintiff and members of the California Subclass, pursuant to § 17535, are entitled to an Order of this Court enjoining such future wrongful conduct on the part of Defendant, and requiring Defendant to disclose the true nature of its misrepresentations and omissions.

111. Plaintiff and members of the California Subclass also request an Order requiring Defendant to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, as well as interests and attorneys' fees.

/ / /
/ / /

**CLASS ACTION COMPLAINT**

### THIRD CAUSE OF ACTION
### Consumer Legal Remedies Act
### (Cal. Civ. Code § 1750, *et seq.*)
### (*for the California Subclass*)

112.   Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

113.   Plaintiff brings this action pursuant to California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.

114.   The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

115.   The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

116.   Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

117.   Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

118.   Purchase of the Products by Plaintiff and members of the California Subclass are "transactions," as defined by the CLRA in California Civil Code §1761(e).

119.   Defendant violated Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have" in that the Products are falsely and misleadingly labeled and represented, as described herein.

120.   Similarly, Defendant violated section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . if they are of another" by making the false and misleading Representation that the Products kill 99.99% of germs.

121.   In addition, Defendant violated section 1770(a)(9) by advertising the Products "with intent not to sell them as advertised" in that the Products are misrepresented and misbranded as described herein.

122.   Defendant's uniform, material, misrepresentations and omissions regarding

the Products were likely to deceive, and Defendant knew or should have known that its misrepresentations and omissions were untrue and misleading.

123.    Plaintiff and members of the California Subclass could not have reasonably avoided injury.  Plaintiff and members of the California Subclass were unaware of the existence of facts that Defendant suppressed and failed to disclose and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

124.    Plaintiff and members of the California Subclass have been directly and proximately injured by Defendant's conduct.  Such injury includes, but is not limited to, the purchase price of the Products and/or the price of the Products at the prices at which they were offered.

125.    Given that Defendant's conduct violated § 1770(a)(5), Plaintiff and members of the California Subclass are entitled to seek and seek injunctive relief to put an end to Defendant's violations of the CLRA.

126.    Moreover, Defendant's conduct is malicious, fraudulent, and/or wanton in that Defendant intentionally misled and withheld material information from consumers to increase the sale of the Products.

127.    Pursuant to California Civil Code § 1782(a), on February 10, 2020 and March 11, 2020, Plaintiff on his own behalf, and on behalf of members of the California Subclass, provided notice to Defendant of the alleged violations of the Consumer Legal Remedies Act by letters setting forth Plaintiff's claims.[4]  Despite giving Defendant more

---

[4] Plaintiff's letter dated February 10, 2020 was addressed to Walgreen Co. regarding Walgreens brand hand sanitizer and his letters dated March 11, 2020 were addressed to Walmart, Inc. regarding Equate brand hand sanitizer and Vi-Jon, Inc. regarding Germ-X brand hand sanitizer.  Each of the letters asserted pursuant to the CLRA that the Products were misbranded based on the false and misleading label Representation that the Products kill 99.99% of germs, and set forth detailed information concerning the basis for Plaintiff's allegation that the label claims are false and misleading.  Defendant Vi-Jon, Inc. responded to each of the letters and counsel for Plaintiff and Defendant engaged in substantial discussions regarding Plaintiff's claims.

**CLASS ACTION COMPLAINT**

than 30-days from the date of the notification letters to provide appropriate relief for violations of the CLRA, Defendant has failed to provide any such relief. As such, Plaintiff also seeks compensatory, monetary and punitive damages, in addition to equitable and injunctive relief, and requests that this Court enter such Orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief as is provided in California Civil Code § 1780 and in the Prayer for Relief.

128. Plaintiff requests that the Court enjoin Defendant from continuing to employ its unlawful methods, acts, and practices alleged herein pursuant to § 1780(a)(2).

**FOURTH CAUSE OF ACTION**
**Breach of Express Warranty**
***(for the Nationwide Class and California Subclass)***

129. Plaintiff re-alleges and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein.

130. By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging and labeling, as described herein. This labeling and advertising constitutes express warranties and became part of the basis of the bargain between Plaintiff and members of the Class, and Defendant.

131. Defendant, through its advertising and labeling, created express warranties that the Products comport with the label representation. Specifically, Defendant created express warranties that the Products kill 99.99% of germs.

132. The express warranties appear on all labels of the Products and specifically relate to the goods being sold.

133. Despite Defendant's express warranties about the nature of the Products, the Products do not comport with the Representation. Thus, the Products were and are not what Defendant represented them to be.

**CLASS ACTION COMPLAINT**

134.    Accordingly, Defendant breached express warranties about the Products and their qualities because the Products do not conform to Defendant's affirmations and promises.

135.    Plaintiff provided Defendant with pre-suit notice of the breach of warranty, including by letters dated February 10, 2020 and March 11, 2020.

136.    Plaintiff and members of the Class purchased the Products.

137.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products.  Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
### QUASI-CONTRACT
### (*for the Nationwide Class and California Subclass*)

138.    Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

139.    By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

140.    Defendant had knowledge of such benefits.

141.    Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

142.    Defendant's acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent and misleading representations and omissions and unlawful conduct.

143.    Equity cannot in good conscience permit Defendant to be economically enriched for such actions at the expense of Plaintiff and members of the Class, and therefore restitution and/or disgorgement of such economic enrichment is required.

**CLASS ACTION COMPLAINT**

**PRAYER**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

A.      For an order certifying the Nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the nationwide Class and California Subclass; and naming Plaintiff's attorneys as Class Counsel to represent the Class and California Subclass;

B.      For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

C.      For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiff and the Class for all causes of action;

D.      For an order requiring Defendant to immediately cease and desist from selling its misbranded Products in violation of law; enjoining Defendant from continuing to label, market, advertise, distribute, and sell the Products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

E.      For an order awarding attorneys' fees and costs;

F.      For an order awarding punitive damages;

G.      For an order awarding pre-and post-judgment interest; and

H.      For such other and further relief as the Court deems just and proper.


DATED:  July 27, 2020                    **KAMBERLAW, LLP**

                                         By:  */s/  Naomi B. Spector*
                                              Naomi B. Spector, Esq.

                                         *Attorneys for Plaintiff and the putative Classes*

**CLASS ACTION COMPLAINT**