UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY MORENO, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VI-JON, LLC.,<br><br>Defendant. | Case No.: 20cv1446 JM(BGS)<br><br>**ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

Presently before the court is Defendant Vi-Jon, LLC's Motion to Dismiss Second Amended Complaint, filed pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6). (Doc. No. 24.) The motion has been fully briefed and the court finds it suitable for submission on the papers and without oral argument in accordance with Civil Local Rule 7.1(d)(1). For the reasons set forth below, Defendant's motion is granted.

**I.    BACKGROUND**

On July 27, 2020, Plaintiff filed a consumer class action complaint against Defendant, seeking damages and equitable relief for the alleged false and misleading labeling on Defendant's hand sanitizing products. (Doc. No. 1, at ¶¶ 1-8.) The complaint alleged violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq;* violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq;* violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770, *et seq;* breach of warranty; and quasi-contract.

On September 14, 2020, Plaintiff filed the First Amended Complaint. (Doc. No. 13, "FAC".) The FAC asserted FAL, UCL, CLRA, breach of express warranty, and quasi contract claims against Defendant for misrepresenting and misleading consumers regarding the hand sanitizers. On March 3, 2021, this court granted Defendant's motion to dismiss with leave to amend. (Doc. No. 21.)

On March 24, 2021, Plaintiff filed the Second Amended Complaint. (Doc. No. 22, "SAC".) The SAC asserts FAL, UCL, CLRA, breach of express warranty, breach of implied warranty, and quasi contract claims against Defendant for misrepresenting and misleading consumers regarding the hand sanitizers (the "Products")[1]. The SAC alleges that the front-facing, primary display panel of each Product contains the statement "kills 99.99% of germs" followed by an asterisk[2]. (SAC ¶¶ 2, 3.) Further, it is alleged that next to the asterisk on the back panels of the Products are the statements: "Effective at eliminating more than 99.99% of many common harmful germs and bacteria in as little as 15 seconds" or "Effective at eliminating 99.99% of many common harmful germs and bacteria in as little as 15 seconds." (*Id.* ¶ 4.) The SAC alleges the Representations are false and misleading because the Products "do not kill" 99.99% of germs or disease-causing organisms. (*Id.* ¶¶ 5, 7, 100-106, 124-125.) Plaintiff contends that the "Products are ineffective or substantially ineffective against approximately 54 pathogens, or approximately 26%" of approximately 204 clinically relevant pathogens, listed in a compendium of disease-causing agents provided by the Bode Science Center. (*Id.* ¶¶ 8, 9, 107-123, 126-129.) To illustrate his point, Plaintiff points to the Products' ineffectiveness against non-enveloped viruses, protozoa pathogens and bacterial spores

---

[1] The hand sanitizers at issue include the following four brands: (1) CVS Health and/or CVS Pharmacy; (2) Equate (Walmart); (3) Germ-X; (4) Walgreen Co.

[2] The court will refer to the front label statement as the "Front Panel Representation," the rear label statement next to the asterisk as the "Rear Panel Representation" and the statements collectively as the "Representations."

including norovirus, cryptosporidium, human papillomavirus ("HPV"), giardia, enterococcus, poliovirus, MRSA, pseudomonas aeruginosa, C. difficile, staphylococcus and E. coli. (*Id.* ¶¶ 14, 22-32, 108, 109, 126-160.)

Plaintiff also maintains the Back Panel Representation that common germs and bacteria will be eliminated "in as little as 15 seconds" is misleading because the Center for Disease Control and Prevention ("CDC") website "states that hand sanitizer should remain on hands for 'around 20 seconds.'" (*Id.* at ¶¶ 33, 34; *see also id.* ¶¶ 191-195.) Additionally, Plaintiff alleges the Products may be ineffective against germs, irrespective of time, if used on dirty, grimy or greasy hands or if the Product is not rubbed all over the hands. (*Id.* ¶ 35; *see also id.* ¶¶ 161-164.) Relatedly, Plaintiff asserts that material information has been omitted from the labels regarding the Products' limitations and ability to kill germs. (*Id.* ¶¶ 36-39, 165-174.)

Further, Plaintiff alleges the Products are misbranded under the law, are legally worthless, and are not capable of being legally sold. (*Id.* ¶¶ 66, 211-232.) Plaintiff purchased each of the branded Products one or more times in stores in San Diego between November 2019 through February 2020[3]. Had Defendant not made the false and misleading Representations on the Front and Back panels that the Product kills 99% of germs and are effective at eliminating 99.99% of many common harmful germs in as little as 15 seconds, Plaintiff alleges that he would have not purchased them, or alternatively, would have purchased them on different terms. (*Id.* ¶¶ 178-196.)

---

[3] Plaintiff purchased: (1) the CVS product from a CVS store in San Diego for approximately $3.99; (2) the Equate product from a Walmart store in San Diego for approximately $3.97; (3) the Germ-X product from a Walmart store in San Diego for approximately $2.66; and (4) the Walgreens product from a Walgreens store in San Diego for $2.99. SAC ¶¶ 197-201; *see also* Doc. No. 22-1, Declaration of Anthony Moreno, ¶¶ 7-10, 12.

Plaintiff seeks to represent a California Class consisting of "all citizens of California who, within four years prior to the filing of the initial Complaint, purchased Defendant's Products and who did not claim any personal injury from using the Products." (*Id*. at ¶ 223.) The SAC's Prayer for Relief includes, among other things, an order for restitution, disgorgement and an award of compensatory, monetary and punitive damages. (*Id*. at 37.[4])

On April 7, 2021, Defendant filed a motion to dismiss. (Doc. No. 24.) Plaintiff filed his opposition to the motion[5], (Doc. No. 25) and Defendant filed its reply, (Doc. No. 26). Both parties also filed Notices of Supplemental Authority, (Doc. Nos. 28, 29, 30, 31) after the motion was taken under submission, (*see* docket entry nos. 27; Doc. No. 32).

## II.     LEGAL STANDARDS

In its earlier order on Defendant's motion to dismiss (Doc. No. 21), the court outlined the applicable legal standards but will repeat them here for completeness sake. Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss based on the court's lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "[T]hose who seek to invoke

---

[4] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

[5] In his opposition, Plaintiff objects to what he claims are "improperly submitted facts." (Doc. No. 25 at 12-13; Doc. No 25-1.) Plaintiff then generally states that Defendant has "improperly submitted facts and evidence" and the accompanying declaration that purports to support the objection makes specific references to portions of the motion. Defendant responded to the objections. (Doc. No. 26 at 14-14; Doc. No. 26-1.) The court finds no basis for these objections. First, some of the citations are made to arguments being made by Defendant, or to findings in this court's prior order - there is nothing untoward or inappropriate in this. *See, e.g., Stearns v. Select Comfort Retail Corp.,* 763 F. Supp. 2d 1128, 1140 n. 5 (N.D. Cal. July 21, 2010). Second, Defendant's reference to the CDC website to explain the myriad of pathogens and diseases relied on by Plaintiff cannot be faulted when the SAC itself it littered with them, making the source subject to judicial notice. *See, e.g., Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Third, the passing reference to a Google search and the ongoing pandemic's role on the public's awareness of the effectiveness of hand sanitizer was not considered by the court when ruling on this motion. Plaintiff's objections are, therefore, **denied**.

the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of L.A. v. Lyons,* 461 U.S. 95, 101 (1983). Article III requires that: "(1) at least one named plaintiff suffered an injury in fact; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotation marks and citation omitted). Plaintiff has the burden of establishing that the court has subject matter jurisdiction over an action. *Ass'n of Med. Colls. v. U.S.*, 217 F.3d 770, 778-79 (9th Cir. 2000). A party may make either a facial or factual attack on subject matter jurisdiction. *See, e.g., Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003). To resolve a facial challenge, as Defendant makes here, the court considers whether "the allegations contained in [the] complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The court must accept the allegations as true and must draw all reasonable inferences in the plaintiff's favor. *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005); *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

Under Federal Rule of Civil Procedure 12(b)(6), a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This is because a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). Ordinarily, for purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 663. "Determining whether a complaint states a

plausible claim for relief … [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Under Federal Rule of Civil Procedure 9(b), a plaintiff must plead fraud with particularity. "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). Even if "fraud is not a necessary element of a [particular] claim," Rule 9(b) will apply if the plaintiff has "allege[d] a unified course of fraudulent conduct and rel[ied] entirely on that course of conduct as the basis of [the] claim." *Id.* at 1103.

### III. DISCUSSION

Defendant makes substantially similar, if not identical, arguments for dismissal in the current motion, as it did in its earlier motion to dismiss. Specifically, Defendant seeks dismissal on the grounds that: (1) Plaintiff lacks Article III standing; (2) the FAC fails to allege facts sufficient to state any claim upon which relief can be granted; (3) Plaintiff has failed to satisfy the heightened pleading requirements of Rule 9(b); (4) Plaintiff's claim for equitable relief should be dismissed because he has not alleged that he lacks an adequate remedy at law; (5) Plaintiff has failed to allege facts showing an entitlement to restitution; and (6) Plaintiff lacks standing to garner injunctive relief. (*See generally*, Doc. No. 24.) The Court will address each of Defendant's arguments in turn.

#### A. Rule 12(b)(1)

Defendant moves for dismissal under Rule 12(b)(1), asserting this court lacks subject matter jurisdiction because Plaintiff has not met the Article III standing requirements. It argues that Plaintiff has not pled any injury in fact as a result of his purchases, nor any negative experience associated with the Products. (Doc. No. 24-1 at 15-18.) In support, Defendant points to the allegations in the SAC that generalize "unrealized risk of harm that could have resulted from use of the Products (or which the Products allegedly failed to prevent), but which [Plaintiff] does not claim occurred" and notes that Plaintiff never alleges that he contracted any of the viruses he alleges the Products are ineffective against.

(*Id*. at 16.) Again, Defendant argues that Plaintiff is attempting to recast his not cognizable no-injury products liability claims into consumer fraud claims. (*Id.* at 18.) Plaintiff counters that he suffered an injury in fact based on the amount he paid for the misbranded products. (Doc. No. 25 at 15-21.) Additionally, Plaintiff maintains that his claims are based on Defendant's affirmative misrepresentation, which were false and misleading and resulted in economic injury because he purchased the Products and are, therefore, not subject to the product liability - "physical injury" - legal standard relied on by Defendant. (*Id.* at 17-21.)

"There is no subject matter jurisdiction without standing, and the 'irreducible constitutional minimum' of standing consists of three elements." *Romero v. Securus Techs., Inc.,* 216 F. Supp. 1078, 1085 (2016). A plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016). In a class action at least one of the named plaintiffs must meet the Article III standing requirements. *Bates v. United Parcel Servs., Inc.,* 511 F. 3d 974, 985 (9th Cir. 2007). Defendant's arguments implicate the first element.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo,* 136 S. Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560). To that end, "[a] 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating" the existence of an injury in fact." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). Thus, for Plaintiff to have Article III standing, the SAC must allege facts demonstrating that Plaintiff has suffered a concrete injury as a result of the violations of the FAL, UCL, CLRA and breach of express warranty, and quasi contract claims alleged in the SAC.

Like its predecessor, the SAC does not meet this requirement. Plaintiff has failed to support his claim of economic injury by factual allegations. Rather, he has based his

conclusory allegation of economic loss on a speculative future risk of harm. Plaintiff alleges that he would not have purchased the Products had Defendant not made the false and misleading Representations on the Front and Back panels that the Product kills 99% of germs and are effective at eliminating 99.99% of many common harmful germs in as little as 15 seconds. (SAC ¶¶ 178-196.) Even assuming the truth of this allegation, Plaintiff has not pled an injury and has failed to allege an injury that "actually exist[ed]" and that affected him in "a personal and individual way." *Spokeo*, 136 S. Ct. at 1548.

Plaintiff paid for hand sanitizer and received hand sanitizer. Nowhere does Plaintiff contend that he did not receive hand sanitizer. Rather, Plaintiff points to the Products alleged ineffectiveness, or substantial ineffectiveness, against certain non-enveloped viruses, protozoa pathogens and bacterial spores including norovirus[6], giardia,

---

[6] Norovirus spreads by accidentally getting tiny particles of feces or vomit from an infected person into your mouth. Infected food workers are frequently the cause of outbreaks in the United States, often by touching ready-to-eat foods, such as raw fruits and vegetables, with their bare hands before serving them. https://www.cdc.gov/norovirus/about/transmission.html People may use hand sanitizers in addition to hand washing but hand sanitizers should not be used as a substitute for washing hands with warm water and soap. https://www.cdc.gov/norovirus/about/prevention.html

cryptosporidium[7], human papillomavirus ("HPV")[8], C. difficile[9], poliovirus, MRSA, entercococcus[10], staphylococcus[11], and E. coli. (*Id*. ¶¶ 14, 22-32, 126-160.)  Yet nothing suggests that the Products did not accomplish their intended purpose to some degree.  *See Aleisa v. Gojo Indus., Inc.*, Case No. 5:20-cv-2383, Case No. 5:20-cv-2448, _ F. Supp. 3d _ , 2021 WL 1893562, at * 6 (N.D. Ohio, May 11, 2021) ("whether the product kills 98% or 99.99% or some other percentage of germs does not matter…. No allegation claims that

---

[7] Cryptosporidium can be found in water, food, soil or on surfaces or dirty hands that have been contaminated with the feces of humans or animals infected with the parasite. https://www.cdc.gov/parasites/crypto/general-info.html.  It can be spread in a variety of ways, including swallowing recreational water, eating undercooked food, touching your mouth with contaminated hands or exposure to an infected person via sexual contact. *Id*.

[8] HPV, or human papillomavirus, is the most common sexually transmitted infection. There are many different forms of HPV, some types can cause health problems including genital warts and cancers.  It is passed through intimate skin-to- skin contact.  *See* HPV Infection | Human Papillomavirus (HPV) | CDC; STD Facts - Human papillomavirus (HPV) (cdc.gov)

[9] C. difficile, a germ that causes life-threatening diarrhea, that is usually a side-effect of taking antibiotics.  *See* https://www.cdc.gov/HAI/organisms/cdiff/Cdiff_infect.html.  This bacterium generally occurs in patients over 65 years of age and older who have been taking antibiotics for a long period of time or who stay in a healthcare or long-term care facility for an extended time.  *See id*.

[10] Enterococci is a bacterium lives in the intestines and genital tract and can travel into a person's blood, urine or could do so during surgery causing infection. https://www.cdc.gov/hai/organisms/vre/vre.html#Spread.  The bacteria can spread through hospitals if healthcare workers do not wash their hands properly.  *Id*.

[11] Staphylococcus aureus is most prevalent and dangerous in hospitals and other health care facilities and is particularly susceptible to transmission through uncovered or draining wounds, surgeries, injections, and implanted medical devices. https://www.cdc.gov/hai/organisms/staph.html

they received snake oil, water, or a product that did not accomplish its intended purpose to some material degree.").

Regarding Plaintiff's alternative argument that he would have purchased the Products on different terms if he'd known about the false and misleading Representations, such allegations have been found to confer standing where appropriate. For instance, in *Moore v. Mars Petcare US, Inc*., 966 F.3d 1007 (9th Cir. 2020), the plaintiffs alleged that the defendants violated California's consumer-protection laws by packaging and selling "prescription pet food" which led "reasonable consumers falsely to believe that [their] food ha[d] been subject to government inspection and oversight, and ha[d] medicinal and drug properties." *Moore,* 966 F.3d at 1012. In support of their theory of liability and injury, the plaintiffs alleged that they **"paid more for the prescription pet food than they would have** in the absence of the prescription requirement, had they purchased it at all." *Id*. at 1014-15; *see also id*. at 1019 (noting that the plaintiffs' "state law claims are based in part on a theory of fraud: that prescription pet food is not materially different from non-prescription pet food and therefore does not justify the higher cost").[12] The Ninth Circuit concluded these allegations were sufficient to show actual reliance in order to have standing sufficient to survive the motion to dismiss. In doing so, the Court of Appeals explained that reliance is inferred from the misrepresentation of a material fact, finding it "plausible that a reasonable consumer would at least partially rely on the prescription labeling to pay more money for a certain type of food over others." *Id.* at 1021. Further, it noted that "[t]he misrepresentation of prescription pet food as medicine or FDA-controlled can be a material fact for a reasonable consumer…." *Id.*

---

[12] In finding the affirmative prescription pet food and brand names misleading, the court first looked to the dictionary to determine that "common sense dictates that a product that requires a prescription may be considered a medicine that involves a drug or controlled substance." *Moore,* 966 F.3d at 1018. Next, using this definition, the court concluded that a reasonable consumer being marketed "prescription pet food," "may be surprised to learn that there were no drugs or controlled ingredient" in the product. *Id.*

Here, the SAC falls far short. It makes no representations that the alleged issues resulted in payment of a premium. And, as detailed below, the court does not find it plausible that a reasonable consumer would read the Representations as Plaintiff does. Indeed, this court finds Plaintiff's reading implausible and inconsistent with how a reasonable consumer would understand the Products' function. Moreover, the court is unaware of the existence of an over-the-counter hand sanitizer that can protect Plaintiff against the various pathogens, diseases and illnesses listed by him, especially when one considers that contracting one of the listed diseases/viruses depends on a number of outside variables, nor does Plaintiff allege the existence of any such hand sanitizer on the market.[13]

And, as this court noted previously, Plaintiff ignores the unassailable reality that the Products do not represent that they will kill any of the serious pathogens listed by Plaintiff, for example HPV, while he does nothing more than simply:

> "mathematically" calculate that the percentage of serious disease bearing "germs" must, logically, exceed 0.01% of the universe of germs [before concluding that the Products], cannot "kill" all [common] germs. This argument is insufficient to confer Article III standing." See Doc. No. 21 at 7.*See, e.g., Birdsong v. Apple,* 590 F.3d 955, 961 (9th Cir.2009) (plaintiff did not adequately allege injury in fact due to false labeling when defendant adequately disclosed potential risks to customers); *Boysen v. Walgreen Co.,* No. C 11- 06262 SI, 2012 WL 2953069, at * 7 (N.D. Cal. July 19, 2012); *Herrington v. Johnson & Johnson Consumer Cos., Inc.,* No. C 09-1597 CW, 2010 WL 3448531, at * 3 (N.D. Cal. Sept. 1, 2010); *In re McNeil Consumer Healthcare,* 877 F. Supp. 2d 254 (E.D. Pa. 2012); *Williams v. Purdue Pharma Co.,* 297 F. Supp. 2d 171 (D.D.C. 2003).

Doc. No. 21 at 7.

In sum, Plaintiff has not alleged any harm that is certainly impending as to himself; he has only pled a speculative, conjectural and hypothetical injury. *See Lujan*, 504 U.S. at 560 (To establish injury in fact—the relevant element here—the plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and

---

[13] This consideration alone should serve to distinguish the *Moore* case as there existed in that relevant market both prescription and non-prescription pet food.

particularized" and "actual or imminent, not conjectural or hypothetical") (internal quotations omitted). Consequently, the motion to dismiss the complaint, made pursuant to Rule 12(b)(1), is **GRANTED**.

### B. Sufficiency of Plaintiff's Allegations

Second, Defendant contends that Plaintiff has failed to plead sufficient facts to support his claims, or with the requisite specificity, required by Federal Rules of Civil Procedure 9(b) and 12(b)(6).

#### 1. CLRA, FAL & UCL claims

Defendant makes several arguments in favor of dismissal of these claims. (Doc. No. 24-1 at 20-30.) The court will focus on Defendant's assertion that Plaintiff's claims should be dismissed because the court can conclude as a matter of law that members of the public are not likely to be deceived by the advertisement. (*Id*. at 20-26.) Relatedly, Defendant argues Plaintiff's reliance on the germs listed in the SAC is not appropriate because the reasonable consumer would not consider them to be "common" germs. (*Id*. at 24-26.) Plaintiff counters that it is almost always inappropriate at the pleadings stage to determine whether a reasonable consumer would be deceived by the label. (Doc. No. 16 at 21-23.) Plaintiff also asserts that Defendant cannot substitute its self-serving conclusions for the facts pled nor escape its misconduct through minutia. (*Id*. at 24-27.) Further, Plaintiff argues that the Rear Panel Representation does not dispel or alleviate the deception on the front panel and contains additional false and misleading statements. (*Id*. at 27-29.)

##### (i) Reasonable Consumer

Defendant contends that, when read as whole, the Product packaging and labels would not establish that reasonable consumers could be misled. (Doc. No. 24-1 at 22.)

As the court explained in its prior order, California has enacted a number of consumer protection statutes in order to protect its citizens from unfair, deceptive or fraudulent business practices. The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any customer." CAL. CIV. CODE § 1770(a). Similarly, the

UCL prohibits any "unlawful, unfair or fraudulent business act or practice," and the FAL prohibits any "unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE §§ 17200, 17500. These claims are governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). The test requires that plaintiff demonstrate "more than the mere possibility that the label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Ebner v. Fresh*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.,* 105 Cal. App. 4th 496 (2003)). "Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (internal quotation marks omitted).

Whether a business practice is deceptive will usually be a question of fact not appropriate for determination at the pleadings stage. *Williams*, 552 F.3d at 938. "However, in certain instances, [and as recognized by *Williams* at 939] a court can properly make this determination and resolve claims based on its review of the product packaging." *Brown v. Starbucks Corp.*, Case No.: 18cv2286 JM (WVG), 2019 WL 996399, at * 3 (S.D. Cal. Mar. 1, 2019) (quoting *Pelayo v. Nestle USA, Inc.* 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013)). Qualifying language in the challenged advertising making the meaning of the alleged misrepresentation clear have led district courts within the Ninth Circuit to grant motions to dismiss. *See, e.g., Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (affirming the district court's dismissal of the California consumer claim when "[n]one of the qualifying language is hidden or unreadably small" and appears "immediately next to the representations it qualifies"); *Sponchiado v. Apple Inc.*, Case No. 18-cv-07533-HSG, 2019 WL 6117482, at *4 (N.D. Cal. Nov. 18, 2019) (concluding "a reasonable consumer could not be deceived by the iPhone Products' screen size representation, given the qualifying language expressly notifying the consumer that the actual screen area is less than indicated."); *Dinan v. SanDisk LLC*, Case No. 18-CV-05420-BLF, 2020 WL 364277, at *7-8 (N.D. Cal. Jan 22, 2020) (finding a reasonable consumer could not be deceived regarding the number of gigabytes in the product, given the disclosure sought to clarify the

use of the term); *Elbaz v. Vitals Int'l Grp.*, Case No. 8:17-cv-01673-JLS-DFM, 2018 WL 5868739 at * 3 (C.D. Cal. Apr. 10, 2018) ("No reasonable consumer would understand the representation 100% Natural Preservative System" to mean that every ingredient in the Shampoo is 100% natural…. A consumer would have to ignore half of the representation in order to conclude that "100% Natural" applies to the Shampoo as a whole."); *Bobo v. Optimum Nutrition, Inc.*, Case No.: 14CV2408 BEN (KSC), 2015 WL 13102417, at *5 (S.D. Cal. Sept. 11, 2015) (dismissing claims when language elsewhere on packaging clarified that "100% WHEY" did not mean "100% protein," because "a reasonable consumer, like the plaintiff in *Freeman*, cannot look at only one statement to the exclusion of everything else and claim he has been misled"); *Garcia v. Sony Computer Entm't Am., LLC*, 859 F. Supp. 2d 1056, 1065 (N.D. Cal. 2012) (statement on package about product compatibility was accompanied by an asterisk directing consumers to a separate document, but plaintiff selectively omitted portions of the alleged misrepresentation attributable to defendants, leading the court to conclude that the statements were "only partial statements, and do not rise to the level of affirmative misrepresentations.").

Here, Plaintiff claims that he and reasonable consumers were deceived by Defendant's Representation that the Products kill 99.99% of germs.  (SAC ¶¶ 5, 7, 100-109, 124-125, 178-185, 187-195.)  Plaintiff alleges that "'germs' is defined by Merriam-Webster as amongst other things, 'especially: a microorganism causing disease.'" (*Id*. at ¶ 101.) Further, he alleges that the Products "do not 'kill' certain germs, which comprise more than 0.01% of "germs," "do not 'kill certain germs, which comprise more than .01% of 'common germs,'" and "do not 'kill' certain germs, which comprise more than .01% of 'harmful germs.'"   (*Id*. at ¶¶ 102-104.)  Several pages of the SAC are dedicated to listing what pathogens, diseases and illnesses the Products are ineffective against, including norovirus, HPV, c. difficile, giardia, cryptosporidium, enterococcus, poliovirus, MRSA, pseudomonas aeruginosa, staphylococcus, and E. coli.  (*Id.* ¶¶ 107-110, 114-122, 125-160).

However, when one looks at how these diseases/viruses/bacteria are transmitted and spread, the court is hard pressed to imagined how any reasonable consumer would believe that the Products, which advertise themselves to be effective against 99.99% of common germs, would be effective against those listed in the SAC. For example, Plaintiff's inclusion, once again, of polio, in a list of common germs shreds credulity since an active case of polio has not been reported in the United States since 1979. *See* https://www.cdc.gov/polio/what-is-polio/polio-us.html. Similarly, Plaintiff fails to explain how a reasonable consumer would interpret the Representations to mean that the Products (or any other hand sanitizers) would be effective against a sexually transmitted disease, food-borne illnesses, pathogens found in cat litter and undercooked food, bacteria found in the environment, foods and intestines of people and animals, or the unspecified 54 pathogens identified in the SAC. Plaintiff does not even clarify whether any of these 54 pathogens are those that are admittedly, "uncommon in the United States or in humans," *see* SAC at 35, n.9. Instead, Plaintiff, simply conclusively assumes the diseases/viruses he lists should be regarded as "common germs & bacteria" and then labels them accordingly. The court is not persuaded, preferring to stand by its earlier conclusion that "common sense and logic dictate that a hand sanitizer product will eliminate the germs and bacteria commonly found on hands. With few exceptions, the organisms Plaintiff identifies in the [SAC] either do not occur on human hands or are not common." Doc. No. 21 at 14. *See Souter v. Edgewell Personal Care Co.*, Case No.: 20-CV-1486 TER (BLM), _ F.Supp.3d _, 2021 WL 3892670, at * 5 (S.D. Cal. June 7, 2021). And, in light of the public's general awareness, including amongst school children, regarding the importance of regular handwashing, the court remains unconvinced that the reasonable consumer would think that hand sanitizer is a substitute for washing with soap and water. *See* https://www.cdc.gov/handwashing/show-me-the-science-hand-sanitizer.html (recommending "washing hands with soap and water whenever possible because handwashing reduces the amounts of all types of germs and chemicals on hands. But if soap and water are not available, using a hand sanitizer with at least 60% alcohol can help

you avoid getting sick and spreading germs to others."). *See also Ebner*, 838 F.3d at 966. (concluding "that it is not plausible that 'a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'") (citation omitted.); *Lavie,* 105 Cal.App.4th at 508 ("likely to deceive" means "more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner").

Plaintiff's new allegations that the Products are less effective when hands are dirty, grimy or greasy or that the Products may be "additionally ineffective, even against 'germs' that they would otherwise kill' where they are not properly applied," (Doc. No. 25 at 27; *see also* SAC ¶¶ 161-174), are insufficient to save the claims from dismissal. First, common sense dictates that any hand sanitizer may be less effective when hands are heavily soiled or greasy because the Products do NOT claim to be a substitute for soap and water. Neither do any of the Products make any representations regarding use on hands that are dirty, grimy or greasy. Moreover, any product will not be as effective when not properly applied or used as directed. The Products' directions state: "wet hands thoroughly with product and allow to dry without wiping." (Doc. No. 22-1 at 9, 11, 12, 30.) The fact that some consumers may not follow these instructions does not make the Products misleading.

At bottom, Plaintiff's deceptive advertising claims are simply based on unreasonable or fanciful interpretations of the Representations on the Products at issue. *See Moore v. Trade Joe's Co.* 4 F.4th 874, 882 (9th Cir. 2021) ("it remains the case that 'where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified.'") (quoting *Bell v. Publix Super Markets Inc*, 982 F.3d 477 (7th Cir. 2020)). Thus, Plaintiff has failed to state a claim that the packaging on Defendant's Products is misleading under the CLRA, FAL, and UCL.

In accordance with the foregoing, Defendant's motion to dismiss the CLRA, FAL and UCL claims, made pursuant to Rule 12(b)(6), is **GRANTED.** Having dismissed the

CLRA, FAL and UCL claims as a matter of law, the court declines to address Defendant's alternate argument for dismissal of these claims.[14]

### (ii)   Remaining State Law Claims.

Plaintiff's failure to plausibly allege that Defendant made any misrepresentation or misleading nondisclosure undermines his remaining claims.

"To prevail on a breach of express warranty claim, the plaintiff must prove (the seller's statements constitute an 'affirmation of fact or promise' or a 'description of the goods'; (2) the statement was 'part of the basis of the bargain'; and (3) the warranty was breached." *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App 4th 1213, 1227 (2010). *See also Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 893 (C.D. Cal. 2013) (adding fourth requirement that "the breach caused injury to the plaintiff."). Here, the court has already concluded that Plaintiff's understanding of the bargain is implausible and inconsistent with the understanding of a reasonable consumer. Thus, Plaintiff has failed to plausibly allege that Defendant breached any express warranty. *See Forouzesh v. Starbucks Corp.*, Case No. CV-16-3830 PA (AGRx), 2016 WL 4443203, at * 4 (C.D. Cal. Aug. 19, 2016) ("Plaintiff's strained interpretation of Defendant's menu descriptions, which is inconsistent with the understanding of a reasonable consumer, does not form the 'basis of the bargain' that could support a breach of express warranty claim in these circumstances."); *see also Solak v Hain Celestial Grp., Inc.*, 3:17-CV-0704 (LEK/DEP),

---

[14] Defendant also argues that the SAC fails to meet the heightened pleading standards or to adequately allege the circumstances of Plaintiff's purchase. (Doc. No. 24-1 at 28-29.) Further, Defendant contends that the SAC fails to support an FAL claim because there is no basis to infer that Defendant had knowledge of a false statement allegedly made to Plaintiff. (*Id.* at 29.) Additionally, Defendant asserts that the UCL claim must fail because Plaintiff has not identified any conduct by it that offends an established public policy or violates an underlying law. (*Id.* at 29-30.) Finally, in order to preserve and avoid waiver of any preemption argument, Defendant "expressly adopt[ed] and incorporat[ed] its preemption argument from its prior briefing on the FAC as if fully set forth herein. (*Id.* at n. 20.)

2018 WL 1870474, at * 11 (N.D.N.Y. Apr. 17, 2018) ("the caselaw makes clear that for a statement or representation to provide the basis for an express warranty claim, it still must meet the threshold requirement of 'being material to a reasonable consumer.'") (quoting *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 985) (C.D. Cal. 2015)).

Plaintiff has failed to plead a quasi-contract claim because, as explained above, there was no false representation. Plaintiff's quasi-contract claim is asserted under the theory of unjust enrichment and seeks restitution and/or disgorgement. But with no false representation appearing on the Products, and no apparent fraud on the part of Defendant, there can be no unjust enrichment. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (To bring an action based on a quasi-contract, a plaintiff must allege "that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request."). *See also Myers-Taylor v. Ornau Foods N. Am., Inc.*, Case No.: 3:18- cv- 01538- H-MDD, 2019 WL 424703, * 6 (S.D. Cal. Feb. 4, 2019) (in order to successfully plead a quasi-contract claim based on unjust enrichment, a plaintiff must show some fraud.); *First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1670 (1992) ("A quasi-contract action, in the form of a common count for money had and received, to recover money obtained by fraud (waiver of tort) or mistake, is governed by the fraud statute."). Likewise, the absence of a fraudulent and misleading representation means that Plaintiff's claim for restitution is not supported by sufficient facts at this time. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) ("[I]n calculating restitution under the UCL and FAL, the focus is on the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information."); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 506 (S.D. Cal. 2013) (the various California consumer protection laws provide the court with "very broad discretion to determine an appropriate remedy as long as it is supported by the evidence and is consistent with the purpose of restoring to the plaintiff the amount that the defendant wrongfully acquired.") (internal citation omitted).

In accordance with the foregoing, the court **GRANTS** Defendant's motion to dismiss the breach of warranty and quasi-contract claims.

### IV.   CONCLUSION

In accordance with the foregoing, the court **GRANTS** Defendant's motion to dismiss the SAC.  (Doc. No. 24.)  The Clerk of Court shall CLOSE this case.

IT IS SO ORDERED.

Dated:  December 6, 2021

_____
Hon. Jeffrey T. Miller
United States District Judge