UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ANTHONY MORENO, individually and
on behalf of others similarly situated,

Plaintiff,

v.

VI-JON, LLC,

Defendant.

Case No.: 20cv1446 JM (BGS)

**ORDER ON MOTION TO DISMISS
FOURTH AMENDED COMPLAINT**

Presently before the court is Defendant Vi-Jon, LLC's Motion to Dismiss Plaintiff Anthony Moreno's Fourth Amended Complaint. (Doc. No. 54). Pursuant to Local Rule 7.1(d)(1), the court finds the matter presented appropriate for resolution without oral argument. Having considered the Parties' arguments, the evidence, and the law, the court rules as follows.

## BACKGROUND

### I.     Factual Background

The facts as alleged in this case were set forth in the court's prior March 3, 2021 Order on Defendant's Motion to Dismiss First Amended Complaint ("FAC") (Doc. No. 21), December 6, 2021 Order on Defendant's Motion to Dismiss Plaintiff's

1

Second Amended Complaint ("SAC") (Doc. No. 33), and March 20, 2023 Order on Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint ("TAC") (Doc. No. 52).  For the sake of completeness, the court repeats the facts below and supplements its summary with relevant additional allegations set forth in Plaintiff's Fourth Amended Complaint.

The instant dispute is a putative class action arising from Plaintiff's allegations Defendant's hand sanitizers (the "Products") contain labels falsely and misleadingly representing their ability to kill germs.

Between November 2019 through February 2020, Plaintiff purchased one or more of each of Defendant's Products, sold under either a store brand (*e.g.*, CVS, equate, Walgreen, etc.) or Defendant's own brand (Germ-x).  Fourth Amended Complaint at ¶¶ 26, 164, 186–190.  Plaintiff alleges each of Defendant's Products contain a front display panel representing that the Products "kill[] 99.99% of germs" or "kill[] more than 99.99% of germs." (Doc. No. 53 at ¶ 4).  An asterisk on the front panel "leads to" an asterisk on a back panel which states that the Products are "[e]ffective at eliminating more than 99.99% of many common harmful germs and bacteria in as little as 15 seconds" or "[e]ffective at eliminating 99.99% of many common and harmful germs and bacteria in as little as 15 seconds."  *Id.* at ¶¶ 6–7.  Plaintiff alleges "reasonable consumers" of Defendants' Products understand these representations to mean that the Products "kill all or almost all of the germs on their hands," or more specifically, that the Products "completely kills 99.99% of the germs on their hands."  *Id.* at ¶ 12.

Contrary to these representations, however, Plaintiff contends Defendant's Products do not "kill all or almost all germs on hands."  *Id.* at ¶ 13.  Instead, Plaintiff alleges that "under optimal laboratory conditions," Defendant's Products "kill only approximately 47% of the 1227 organisms that are pathogenic to humans and can be transmitted by hands" and "fail to kill approximately 40% of the germs that are most commonly found on hands, which cause illnesses in the United States population."  *Id.* at ¶¶ 15, 17.  As examples, Plaintiff points to the Products' alleged ineffectiveness against

2

adenovirus, coxsackievirus, enteroviruses, rhinoviruses, norovirus, rotavirus, cryptosporidium and C. difficile. *Id.* at ¶¶ 18–19, 71, 73–125. Plaintiff further contends Defendant fails to do any "real world testing" on the effectiveness of these Products on germs commonly found on hands in a real world setting to substantiate its representations. *Id.* at ¶¶ 2, 20–25. Specifically, Plaintiff alleges Defendant only tests its Products "against approximately 2% of the approximately 1227 organisms that are pathogenic to humans and can be transmitted by hands." *Id.* at ¶ 20.

As a consequence of these alleged misrepresentations, Plaintiff alleges that he and other potential class members were misled into purchasing products they would not have otherwise purchased or would have purchased on different terms. *Id.* at ¶ 196.

## II.    Procedural Background

On July 27, 2020, Plaintiff filed the instant putative class action asserting causes of action for: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; (3) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (4) breach of express warranty; and (5) quasi-contract. (Doc. No. 1).

On September 14, 2020, Plaintiff filed a FAC asserting the same five causes of action and an additional cause of action for breach of implied warranty. (Doc. No. 13). On March 3, 2021, this court granted Defendant's Motion to Dismiss Plaintiff's FAC with leave to amend. (Doc. No. 21).

On March 24, 2021, Plaintiff filed a SAC, which among other things, removed Plaintiff's sixth cause of action for breach of implied warranty. (Doc. No. 22). On December 16, 2021, the court granted Defendant's Motion to Dismiss Plaintiff's SAC. (Doc. No. 33). Specifically, the court granted Defendant's Motion to Dismiss under Rule 12(b)(1) for lack of Article III standing, finding Plaintiff had "only pled a speculative, conjectural and hypothetical injury." *Id.* at 11. The court further granted Defendant's Motion to Dismiss under Rule 12(b)(6), finding that a reasonable consumer would not

have interpreted the representations found in Defendant's Products to mean these Products would be effective against the pathogens identified in Plaintiff's SAC, which included a sexually transmitted disease, food-borne illnesses, pathogens found in cat litter and undercooked food, and bacteria found in the environment, foods and the intestines of people and animals. *Id.* at 14–16. As this was the second time Plaintiff had been given the opportunity to amend, the Clerk of Court was instructed to close the case. *Id.* at 19.

Plaintiff subsequently appealed. (Doc. No. 35). In an unpublished memorandum disposition, the Ninth Circuit reversed this court's order granting dismissal pursuant to Rule 12(b)(1), vacated this court's 12(b)(6) ruling, and directed that Plaintiff be granted leave to amend. (Doc. No. 42). Of relevance, the Ninth Circuit stated:

> At oral argument, responses to the panel's questions indicated that Moreno's complaint could be amended such that it would potentially survive 12(b)(6) dismissal. For example, the parties disagree about whether the complaint adequately alleges falsity as to the hand sanitizers' ability to kill only germs commonly found on hands, as opposed to all germs. The district court read the complaint as referring to all germs, but Moreno contends the complaint may be amended to refer to germs commonly found on hands. Both parties agreed at oral argument that the 12(b)(6) analysis would be different under such allegations.

*Id.* at 4.

On January 10, 2023, Plaintiff filed a TAC. (Doc. No. 43). On March 20, 2023, the court granted Defendant's Motion to Dismiss Plaintiff's TAC, finding Plaintiff had not complied with the Ninth Circuit's mandate to file a pleading specifically containing allegations regarding the ability of Defendant's Products to kill 99.99% of germs commonly found on hands. (Doc. No. 52 at 6).

On April 10, 2023, Plaintiff filed a Fourth Amended Complaint. (Doc. No. 53). On April 24, 2023, Defendant filed a Motion to Dismiss. (Doc. No. 54). On May 16, 2023, Plaintiff filed an Opposition. (Doc. No. 59). On May 23, 2023, Defendant filed a Reply. (Doc. No. 60). Defendant's Motion is now fully briefed and ripe for resolution.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  On the other hand, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Nor is the court "required to accept as true allegations that contradict exhibits attached to the [c]omplaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

Pleading facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  This plausibility review is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (quotation marks omitted).

### ANALYSIS

In its Motion to Dismiss, Defendant contends Plaintiff's Fourth Amended Complaint should be dismissed because: (1) Plaintiff's CLRA, FAL, and UCL claims do not pass the reasonable consumer test; (2) Plaintiff's allegations do not meet the heightened pleading standard for claims rooted in fraud; (3) Plaintiff's FAL claim fails because Plaintiff failed to allege facts supporting his claim the Products were advertised as effective at eliminating the germs referenced in Plaintiff's Fourth Amended Complaint; (4) Plaintiff  failed to allege any conduct that would provide a theory of liability under either the UCL's unlawful or unfairness prongs; and (5) Plaintiff failed to adequately allege deceptive conduct or reasonable reliance to support a claim for breach of express warranty.  (Doc. No. 54-1 at 12–27).  Defendant further contends Plaintiff's claims for equitable relief should be stricken or dismissed with prejudice.  *Id.* at 27–29.  The court will address each of Plaintiff's causes of action, in turn, below.

### I.   Opinions of Dr. Elizabeth Fortunato

Before adjudicating Defendant's Motion to Dismiss on the merits, the court first addresses Defendant's request that the court disregard all allegations in Plaintiff's Fourth Amended Complaint attributed to Dr. Elizabeth Fortunato.   (Doc. No. 54-1 at 18–21).

In his Fourth Amended Complaint, Plaintiff attributes a number of allegations to Dr. Fortunato's "expert scientific analysis," specifically Plaintiff's claims that: (1) "there are approximately 1227 organisms that are pathogenic to humans that can be transmitted by hands"; (2) "under optimal laboratory conditions, [Defendant's] Products kill only approximately 47% of the 1227 organisms that are pathogenic to humans and can be transmitted by hands"; and (3) "the Products fail to kill approximately 40% of the germs that are most commonly found on hands, which causes illnesses in the United States population."  (Doc. No. 53 at ¶¶ 14–15, 17).

///

Defendant contends the court should disregard all of Plaintiff's allegations that are attributed to Dr. Fortunato because they are not supported by or misrepresent the opinions Dr. Fortunato submitted in the *Macormic v. Vi-Jon, LLC*, Case No. 4:20-cv-1267 HEA (E.D. Mo.) and *Loughlin v. Vi-Jon, LLC*, Case No. 1:20-cv-11555 MLW (D. Mass.) cases—as evidenced by various expert reports, deposition transcripts, and briefing. (Doc. Nos. 54-1 at 18–21; 60 at 6–10).  In response, Plaintiff contends these allegations are well-supported by Dr. Fortunato's expert analysis, as evidenced by a declaration Dr. Fortunato submitted in the *Loughlin* matter.  (Doc. No. 59 at 12–14, 19).

To resolve the question of whether Dr. Fortunato's "expert analysis" properly supports Plaintiff's allegations would, however, force this court "to confront a myriad of complex evidentiary issues not generally capable of resolution at the pleading stage." *DeMarco v. Depotech Corp*., 149 F. Supp. 2d 1212, 1221 (S.D. Cal. 2001).  This point is well illustrated in this case, where Defendant is effectively requesting that the court take judicial notice of numerous pieces of evidence outside of the four corners of Plaintiff's pleading to determine: (1) whether Plaintiff correctly characterized Dr. Fortunato's opinions; (2) whether those allegations were properly supported by evidence; and even (3) whether Dr. Fortunato was qualified to render such opinions.  (*See* Doc. Nos. 54-1 at 18–21; 59 at 12–14, 19; 60 at 6–10).

In order to do so, the court would be ignoring the basic differences between a motion to dismiss and a motion for summary judgment or a *Daubert* motion.  At the motion to dismiss stage, the court's role is not to assess whether Plaintiff's allegations are truthful or supported by evidence.  Although Defendant is allowed to challenge whether Plaintiff's allegations are adequately supported by the evidence, such a challenge is not properly before the court at this stage of the proceedings.  *See United States v. LSL Biotechnologies*, 379 F.3d 672, 699 (9th Cir. 2004) ("[T]he nature of Rule 12(b)(6) does not allow courts to reach matters outside the pleading without following the summary judgment procedures of Rule 56.") (internal quotation marks omitted); *see Thaut v. Hsieh*, No. 2:15-cv-0590-JAM-KJN (PS), 2016 U.S. Dist. LEXIS 70781, at *30 (E.D.

7

Cal. May 27, 2016) (finding that the court could not consider the contents of an expert declaration "in ruling on a motion to dismiss for failure to state a claim without converting the motion into one for summary judgment."); *In re Silicon Storage Tech., Inc., Sec. Litig.*, No. C-05-0295 PJH, 2007 U.S. Dist. LEXIS 21953, at *90 n.10 (N.D. Cal. Mar. 9, 2007) ("[I]t is well-established that courts should not consider an expert or other affidavit submitted in support of a Rule 12(b)(6) motion to dismiss, unless the parties have agreed that the motion will be treated as a motion for summary judgment."). As neither Party has requested that the court transform Defendant's current motion to dismiss into one for summary judgment, the court declines to do so here.[1]

Regardless, even assuming the court were to consider the allegations attributed to Dr. Fortunato, it would still not relieve Plaintiff of his burden to advance a plausible claim for relief. As set forth below, the inclusion of Dr. Fortunato's "expert analysis" in Plaintiff's Fourth Amended Complaint has minimal bearing on the court's decision.

## II.   Plaintiff's Consumer Protection Claims

Defendant moves to dismiss Plaintiff's Consumer Protection Claims for the fifth time, contending that Plaintiff has still not sufficiently pled a plausible claim for relief under the reasonable consumer standard of the CLRA, FAL and UCL. (Doc. Nos. 10; 15; 24; 44; 54-1 at 12–23). In response, Plaintiff contends that Plaintiff's Fourth Amended Complaint sufficiently addresses the pleading inadequacies previously identified by this court. (Doc. No. 59 at 15–27).

### A.   Legal Standard

Before addressing the merits of Defendant's motion to dismiss Plaintiff's consumer protection claims, the court briefly reviews the legal standards at issue. The CLRA, FAL, and UCL are California's consumer protection statutes. The CLRA

---

[1] Indeed, Defendant explicitly states in its briefing that it is not Defendant's intention to convert its motion to dismiss into a summary judgment or *Daubert* motion. (Doc. No. 54-1 at 20).

8

prohibits "unfair methods of competition" or "unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any customer," CAL. CIV. CODE § 1770(a), the UCL prohibits any "unlawful, unfair or fraudulent business act or practice" and the FAL prohibits any "unfair, deceptive, untrue or misleading advertising," CAL. BUS. & PROF. CODE §§ 17200, 17500.  "Courts often analyze these statutes together because they share similar attributes."  *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014).

Claims under the CLRA, FAL and UCL are governed by the "reasonable consumer test."  *Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008).  To satisfy this test, a plaintiff "must show that members of the public are likely to be deceived."  *Ebner v. Fresh, Inc*., 838 F.3d 958, 965 (9th Cir. 2016) (internal quotation marks omitted).  "This is not a negligible burden."  *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021).  To meet this standard, a plaintiff must demonstrate:

> more than a mere possibility that [a defendant]'s label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.  Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.

*Ebner*, 838 F.3d at 965 (internal quotation marks and citation omitted).  "The touchstone under the 'reasonable consumer' test is whether the product labeling and ads promoting the products have a meaningful capacity to deceive consumers."  *McGinity v. P&G*, No. 22-15080, 2023 U.S. App. LEXIS 14436, at *8 (9th Cir. June 9, 2023).[2]

---

[2] The court had already reviewed the *McGinty* decision prior to Defendant filing its Motion for Leave to File Notice of Supplemental Authority.  (Doc. No. 62).  For these reasons, Defendant's Motion for Leave is **DENIED** as unnecessary.

9

Whether a reasonable consumer would likely be deceived by a product label is generally a question of fact not amenable to determination on a motion to dismiss. *See Williams*, 552 F.3d at 938; *see also Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35 (2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on demurrer.") (internal quotation marks omitted).   "'However, in certain instances, a court can properly make this determination and resolve such claims based on its review of the product packaging.'" *Brown v. Starbucks Corp.*, No. 18cv2286 JM (WVG), 2019 U.S. Dist. LEXIS 33211, at *6 (S.D. Cal. Mar. 1, 2019) (quoting *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013)).   "[W]here a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate." *Pelayo*, 989 F. Supp. 2d at 978 (collecting cases).

## B.   Analysis

Here, the court agrees with Defendant that dismissal of Plaintiff's CLRA, FAL and UCL claims continues to be appropriate for the reasons outlined below.

### 1.   Plaintiff's Fourth Amended Complaint Fails to Satisfy the Ninth Circuit's Mandate

First, despite the court's March 20, 2023 Order directing Plaintiff to comply with the Ninth Circuit's mandate, Plaintiff's Complaint still fails to contain any allegations a reasonable consumer would be misled because Defendant's Products fail to kill 99.99% of germs *commonly found on hands*.   Instead, Plaintiff continues to allege a reasonable consumer would interpret the labels on Defendant's Products to mean that the Products "*completely* kills 99.99% of the germs *on their hands*" with germs defined as "things that can make [individuals] sick."   (Doc. No. 53at ⁋ 12) (emphasis added).   Plaintiff then alleges the labels on Defendant's Products are, therefore, misleading because the Products "do not . . . kill all or almost all germs on hands." *Id.* at ⁋ 13.   This contradicts Plaintiff's own representations to the Ninth Circuit that his complaint could be amended

"to refer to germs commonly found on hands" (Doc. No. 42 at 4) and ignores the critical limitation of the court's prior decisions that "common sense and logic dictate that a hand sanitizer product will eliminate the germs and bacteria *commonly found on hands*" (Doc. Nos. 21 at 14; 33 at 15; 52 at 6).

It is not enough that Plaintiff has made an attempt at amending his complaint to sporadically include allegations Defendant's Products do not kill 99.99% of germs commonly found on hands with citations to extrinsic evidence, including "expert analysis." Even were the court to take this expert analysis into consideration, there is a clear distinction between Plaintiff alleging a reasonable consumer would believe Defendant's Products kill 99.99% of all or almost all germs in existence transmissible by hand versus 99.99% of germs *commonly* found on hands. The same distinction exists between Plaintiff alleging the labels on Defendant's Products are false and misleading because the Products do not kill 99.99% of all or almost all germs in existence transmissible by hand versus that the Products do not kill 99.99% of germs *commonly* found on hands.

Here, Plaintiff unequivocally alleges the former of these two theories. Specifically, Plaintiff alleges that: (1) a reasonable consumer would expect Defendant's Products to kill 99.99% of germs "in general and without limitation" and (2) that the Product labels are false and misleading because the Products fail to do so. (Doc. No. 53 at ¶¶ 12–13; Doc. No. 59 at 26). In Plaintiff's own words, "[u]nder the facts pled . . . the commonality of germs that are not killed by the Products *has no impact on whether consumers are misled by the Representations*." (Doc. No. 59 at 26) (emphasis added).

Indeed, nowhere present in Plaintiff's Complaint are there any non-conclusory factual allegations Defendant's Products do not kill 99.99% of germs commonly found on hands. Instead, *all* of Plaintiff's allegations are qualified in some manner that makes clear Plaintiff is still referring to Defendant's Products' inability to kill *all* germs. For example, Plaintiff alleges that "*as described below*, [Defendant's] Products do not kill 99.99% of germs commonly found on hands." (Doc. No. 53 at ¶ 46) (emphasis added).

Although at first glance, this allegation appears consistent with the Ninth Circuit's mandate, Plaintiff immediately follows this statement by alleging that: (1) "there are approximately 1227 organisms that can cause disease in hands and are capable of transmission by hands"; and (2) "under optimal laboratory conditions, [Defendant's] Products kill only approximately 47% of the 1227 organisms that can be transmitted by hands and are pathogenic to humans." *Id.* at ¶¶ 47–48. Conspicuously absent is any allegation that these 1227 organisms are actually *commonly found* on hands. Instead, it is clear from these subsequent, qualifying statements that Plaintiff is *still* referring to the universe of all germs that can be transmitted by hand.

Plaintiff's allegations as to the specific viruses, protozoan, and spores that Defendant's Products purportedly do not kill all suffer from the same deficiencies. Plaintiff appears to conclusively assume the diseases/viruses he has identified are "commonly found on hands" and labels them accordingly. However, many of the references that Plaintiff cites directly contradict his allegations. For example, while Plaintiff alleges cryptosporidium is "commonly found on hands" (Doc. No. 53 at ¶ 112), the CDC website Plaintiff cites to in support of this allegation actually states that "water (drinking water and recreational water) is the most common way to spread the parasite." https://www.cdc.gov/parasites/crypto/index.html (last accessed July 13, 2023). Again, conspicuously missing is any non-conclusory factual allegation that cryptosporidium is *commonly found on hands*. Instead, cryptosporidium is provided by Plaintiff as just one example in the universe of *all* germs that Defendant's products are ineffective against.

In short, Plaintiff has, in essence, ignored the Ninth Circuit's mandate by continuing to allege a reasonable consumer of hand sanitizers would understand the phrase "kill[] 99.99% of germs "to mean all germs in the universe, regardless of whether such germs are commonly found on hands. As demonstrated above, to the extent Plaintiff even alleges Defendant's Products do not kill 99.99% of germs commonly found on hands, these allegations are immediately diluted in a manner that makes clear Plaintiff is still referring to all germs. This falls well short of the task set forth by the Ninth

Circuit based on Plaintiff's own representations, and is, by itself, grounds to grant Defendant's Motion to Dismiss.

### 2.    Plaintiff's Fourth Amended Complaint Fails the Reasonable Consumer Test

Second, even were the court to set aside the Ninth Circuit's mandate, the court would still find that Plaintiff has failed to plausibly allege that a reasonable consumer would be misled by the front label on Defendant's Products to believe the Products kill 99.99% of *all* germs.  (Doc. No. 53 at ⁋ 12).

Reduced to its base elements, Plaintiff's theory presupposes a reasonable consumer would rationally believe Defendant's Products would protect them against 99.99% of the entire universe of all conceivable germs that could be found on the surface of their hands—without limitation as to how they spread and whether they are commonly found on hands.  These allegations defy logic.  *See Vitt v. Apple Comput.*, No. CV 06-7152-GW (FMOx), 2010 U.S. Dist. LEXIS 150550, at *7 (C.D. Cal. May 21, 2010) ("Because the 'reasonable consumer' inquiry is an objective standard, claims may be dismissed as a matter of law where an alleged statement . . . in context, is such that no reasonable consumer could be misled in the manner claimed by the plaintiff.") (internal quotation marks omitted).

As one District Court aptly put it:

> [H]and sanitizer is called *hand* sanitizer for a reason. Consumers purchase hand sanitizer, to, well, sanitize their hands.  It defies all logic to assume that a reasonable consumer who purchases hand sanitizer will also expect it to offer protection against illnesses most commonly spread by drinking contaminated water, sexual contact, or by taking high doses of antibiotics . . . in a healthcare setting.

*Piescik v. CVS Pharmacy, Inc.*, 576 F. Supp. 3d 1125, 1133 (S.D. Fla. 2021).

In an attempt to circumvent this common-sense proposition, Plaintiff argues it is improper to "impute specialized knowledge of pathogenic diseases to reasonable consumers" of Defendant's "low-cost, everyday Products."  (Doc. No. 59 at 26).  This

argument is unconvincing.  It is not necessary for a reasonable consumer to have any specialized knowledge of pathogenic diseases to understand that hand sanitizers are not designed to kill 99.99% of every conceivable variety of germs that could be found on an individual's hands.  *See Souter*, 2022 U.S. Dist. LEXIS 28386, at *27 ("[A] reasonable consumer would not buy Wet Ones in anticipation of combating a small population of viruses, not well known as diseases transmissible by hand, and not alleged to comprise more than 0.01% of germs.").

The Ninth Circuit's decision in *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021) is instructive on this point, rather than being contradictory, as Plaintiff appears to suggest.  In *Moore*, the Ninth Circuit held a label marketing a store-brand Manuka honey product as "100% New Zealand Manuka Honey" was not likely to deceive a reasonable consumer into believing that the product contained only honey from the Manuka flower. *Id.* at 883–85.  Of particular relevance here, the Ninth Circuit held that "[a]lthough a reasonable consumer might not be an expert in honey production or beekeeping, consumers would generally know that it is impossible to exercise complete control over where bees forage down to each specific flower or plant." *Id.* at 883.  In the same way, although a reasonable consumer may not be an expert on the spread of pathogenic diseases, consumers generally know that it is impossible for a hand sanitizer to kill 99.99% of germs "in general and without limitation." *See id.* at 877 ("[N]o reasonable consumer would believe that [defendant] was marketing a product that is impossible to create.").  A reasonable consumer would also not be required to be a pathogenic disease expert to understand that hand sanitizers are not designed as complete substitutes to washing hands with soap as water.  As the court already noted in its prior Order, "the importance of handwashing is well known, even amongst school children." (Doc. No. 21 at 13).  Contrary to Plaintiff's arguments, it is not necessary for a reasonable consumer to be an expert in pathogenic diseases to reach the above conclusions; instead, a reasonable consumer need only apply ordinary common sense.

Plaintiff's allegations as to how a reasonable consumer would be misled also continues to contradict the packaging of Defendant's Products when read as a whole. Specifically, a reasonable consumer would also be informed by the information contained on the hand sanitizer's back label.  Plaintiff's apparent argument that a consumer would ignore the back label is, again, not persuasive.  As the Ninth Circuit recently held, a front label "must be *unambiguously deceptive* for a defendant to be precluded from insisting that the back label be considered together with the front label." *McGinity*, 2023 U.S. App. LEXIS 14436, at *10–11 (9th Cir. June 9, 2023).  And as the court already noted above, the front label on Defendant's Products is not deceptive in the manner Plaintiff alleges.

Even assuming the front label of Defendant's Products is ambiguous as to their efficacy, "when, as here, a front label is ambiguous, the ambiguity can be resolved by reference to the back label." *McGinity*, 2023 U.S. App. LEXIS 14436, at *12; *see Souter*, 2022 U.S. Dist. LEXIS 28386, at *21 ("At the motion to dismiss stage, qualifying language on packaging, usually on the back label, that clarifies the meaning of the alleged misrepresentation can 'ameliorate any tendency of the label to mislead, as would violate California's False Advertising Law (FAL), Unfair Competition Law (UCL), and Consumer Legal Remedies Act (CLRA).'") (quoting *Moore*, 966 F.3d at 1017).  Here, the front labels on Defendant's Products each contain asterisks leading consumers to a back panel label stating that Defendant's Products are "[e]ffective at eliminating more than 99.99% of many *common harmful germs and bacteria* in as little as 15 seconds" or "[e]ffective at eliminating 99.99% of many *common and harmful germs and bacteria* in as little as 15 seconds." (Doc. No. 53 at ¶ 38).  As the court already held:

> Plaintiff cannot simply look to the statement on the front panel, ignore the asterisk, and claim he has been misled.  *Bobo*, 2015 U.S. Dist. LEXIS 187233, 2015 WL 13102417 at *5.  This is especially true, where as here, there are no other words, pictures or diagrams adorning the packaging that would make the front label statement deceptive.  *See Ebner*, 838 F.3d at 966. ("Apart from the accurate weight label, there are no other words,

15

pictures, or diagrams adorning the packaging ...from which any inference could be drawn or on which any reasonable belief could be based about how much of the total lip product can be accessed by using the screw mechanism."). Put another way, Defendant's use of the word germ is clarified by the disclosure on the back panel, namely that the hand sanitizer is effective at eliminating 99.99% of many *common* harmful germs and bacteria. *See Ebner*, 838 F.3d at 966 (taking into consideration how the reasonable consumer's understanding of how the mechanics of the product works).

(Doc. No. 21 at 11-12); *see also Catholdi-Jankowski v. CVS Health Corp.*, No. 6:22-CV-06227 EAW, 2023 U.S. Dist. LEXIS 26520, at *30 (W.D.N.Y. Feb. 16, 2023) ("A reasonable consumer would further be informed by the information contained on the hand sanitizer's rear label that the phrase 'kills 99.99% of germs' does not refer to all germs, known and unknown. In particular, the qualification that the statement refers only to 'many common germs that may cause illness' makes clear that the claim is limited to a subset of germs."); *Souter*, 2022 U.S. Dist. LEXIS 28386, at *22 (considering qualifying language on back label of sanitizer wipe products where back label did not contradict the front label, but rather "confim[ed] the product's proper use). The court's ruling on this point was not disturbed on appeal and Plaintiff has not provided any reason why the court should reconsider its prior ruling on this issue.

Instead, rather than making any compelling case for the court to reconsider its ruling, Plaintiff, ignoring the back label information referencing the front label representations Defendant's Products kill 99.99% of germs, plucks from the universe of all germs certain pathogens he complains are not killed by Defendant's hand sanitizers. Yet Plaintiff's allegations are devoid of any actual evidence these pathogens are commonly found on hands. Among these selectively chosen pathogens, for example, are Cryptosporidium, which is most commonly spread through water and C. difficile, which is shed in feces. *See* https://www.cdc.gov/parasites/crypto/index.html (last accessed July 13, 2023); https://www.cdc.gov/cdiff/clinicians/faq.html#transmitted (last accessed July

13, 2023).  Plaintiff's allegations a reasonable consumer would purchase hand sanitizers to protect themselves from all of these pathogens, regardless of whether they are commonly found on hands, defies logic, reason, and common sense,

The unreasonableness of Plaintiff's allegations is further illustrated by the damages he is seeking.  Here, Plaintiff seeks economic damages for the difference between the higher price he paid for Defendant's Products, assuming the reference to 99.99% of germs referred to all germs known to mankind, and a lower price for hand sanitizer killing about "47% of the 1227 organisms that are pathogenic to humans and can be transmitted by hands."  (Doc. No. 53 at ¶ 15).  Essentially, Plaintiff complains of the extra dollar or two he paid upon the assumption Defendant's Products would help protect him against the universe of all conceivable germs, as opposed to being limited to killing germs commonly found on hands.  If such a miracle product were to actually exist in the form of Defendant's Products, however, it stands to reason Defendant's Products would be touted as one of the greatest discoveries of medical science to date—*and for just a dollar or two more than common hand sanitizer*.  A reasonable consumer would not seriously entertain such an assumption.

As pled, Plaintiff, and any other consumers who believed Defendant was selling a product capable of killing 99.99% of germs "in general and without limitation" were not deceived because of Defendant's advertising but misled because of their own unreasonable assumptions.  *Catholdi*, 2023 U.S. Dist. LEXIS 26520, at *29 ("[A] reasonable consumer of hand sanitizer products would not understand the phrase 'kills 99.99% of germs' to mean all germs in the universe, known or unknown, and regardless of whether such germs are found on the hands."); *Piescik*, 576 F. Supp. 3d at 1133 ("[R]easonable consumers would not, upon reading a hand sanitizer label that states the product 'kills 99.99% of germs' assume that this means it kills 99.99% of all conceivable disease-causing microorganisms, regardless of whether they are commonly found on the hands.").  While Plaintiff and a small subset of consumers might have hazarded an unreasonable assumption as to the efficacy of Defendant's Products, "'[a]

representation does not become false and deceptive merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed.'" *Davis v. HSBC Bank*, 691 F.3d 1152, 1162 (9th Cir. 2012) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 507 (2003)).   California's consumer protection laws do not require Defendant to anticipate and dispel Plaintiff's wholly incorrect assumptions.

At bottom, Plaintiff's latest claims continue to be a not too nimble avoidance of the Ninth Circuit's directions and limitations for Plaintiff to plead a viable complaint, and instead, continue to be based on Plaintiff's unreasonable or fanciful interpretations of Defendant's Product label representations.   For these reasons, the court **GRANTS** Defendant's Motion to Dismiss Plaintiff's First, Second, and Third Causes of Action.[3]

## III.   Plaintiff's Remaining State Law Claims

Plaintiff's continued failure to plausibly allege that Defendant made any false or misleading representations also undermines his remaining state law claims.   This analysis was already set forth in detail in the court's prior December 6, 2021 Order on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint.   (Doc. No. 33 at 17–19).   For completeness, the court provides a brief analysis below.

### A.   Plaintiff's Breach of Express Warranty Claim

"To state a claim for breach of express warranty under California law, a plaintiff must allege: '(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the

---

[3] While the court acknowledges other courts have allowed similar claims to go forward under the reasonable consumer test, these decisions are not binding legal authority and their reasoning is not persuasive.   *See Mier v. CVS Pharmacy, Inc.*, No. SA CV 20-01979-DOC-ADS, 2021 U.S. Dist. LEXIS 76737 (C.D. Cal. Mar. 22, 2021); *Macormic v. Vi-Jon*, No. 4:20CV1267 HEA, 2021 U.S. Dist. LEXIS 247055, at *16–17 (E.D. Mo. Aug. 6, 2021).   Regardless, the scale in favor of granting Defendant's Motion to Dismiss certainly tips in Defendant's favor given Plaintiff's failure to live up to his own explicit representations to the Ninth Circuit as to how he would amend his complaint.

1  warranty was breached.'"  *Portelli v. WWS Acquisition, Ltd. Liab. Co.*, No. 17-cv-2367

2  DMS (BLM), 2018 U.S. Dist. LEXIS 229593, at *14 (S.D. Cal. July 6, 2018) (quoting

3  *Weinstat v. Dentsply Internat., Inc.*, 180 Cal. App. 4th 1213, 1227 (2010)).

4  Here, Plaintiff's breach of express warranty claim fails for the same reasons his

5  CLRA, FAL, and UCL claims do.  Specifically, Plaintiff's "strained interpretation" of

6  Defendant's Product labels—that a reasonable consumer would understand the labels to

7  mean that the Products kill 99.99% of germs "in general and without limitation"—is

8  "inconsistent with the understanding of a reasonable consumer" and "does not form the

9  'basis of the bargain' that could support a breach of express warranty claim in these

10  circumstances."  *Forouzesh v. Starbucks Corp.*, No. CV 16-3830 PA (AGRx), 2016 U.S.

11  Dist. LEXIS 111701, at *11 (C.D. Cal. Aug. 19, 2016).  Even absent application of the

12  reasonable consumer test, Plaintiff's claim for breach of express warranty is still subject

13  to dismissal because it depends on Plaintiff's implausible definition of how the phrase

14  "kill 99.99% of germs" should be interpreted.  See *Rugg v. Johnson & Johnson*, No. 17-

15  cv-05010-BLF, 2018 U.S. Dist. LEXIS 101727, at *11 (N.D. Cal. June 18, 2018)

16  (dismissing express warranty claim that was based on plaintiff's implausible definition of

17  "hypoallergenic.").   For these reasons, the court **GRANTS** Defendant's Motion to

18  Dismiss Plaintiff's Fourth Cause of Action.

19  **B.    Plaintiff's Quasi-Contract Claim**

20  To plead a claim for quasi-contract, a plaintiff must allege "that a defendant has

21  been unjustly conferred a benefit through mistake, fraud, coercion, or request."  *Astiana*

22  *v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (internal quotation marks

23  omitted).  "The return of that benefit is the remedy typically sought in a quasi-contract

24  cause of action."  *Id.* (internal quotation marks omitted).  Here, as explained above, there

25  was no mistake, fraud, coercion or request.   Defendant's Product Labels were not

26  fraudulent or misleading in the manner that Plaintiff alleges.  Plaintiff's quasi-contract

27  claim, therefore, also fails.  *See Souter v. Edgewell Pers. Care Co.*, 542 F. Supp. 3d 1083,

28  1099 (S.D. Cal. 2021) (denying quasi-contract claim where product labels "were not

fraudulent and misleading in the way that Plaintiff alleges."). For these reasons, the court **GRANTS** Defendant's Motion to Dismiss Plaintiff's Fifth Cause of Action.

## IV.   Leave to Amend

Finally, the court addresses whether Plaintiff should be given yet another opportunity to amend his complaint. Rule 15(a) of the Federal Rules of Procedure provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." "[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad." *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (internal quotation marks omitted). Here, Plaintiff has already had multiple opportunities to amend his complaint to address the pleading deficiencies identified by this court. Plaintiff was also already cautioned in the last round of pleadings that Plaintiff had not fulfilled the task set forth by the Ninth Circuit's memorandum disposition—a task Plaintiff specifically represented to the Ninth Circuit he would be able to accomplish. Although leave to amend should be liberally granted, the court is not obligated to allow Plaintiff an infinite number of opportunities to repetitively reshape his claims. *See Pfau v. Mortenson*, 542 F. App'x 557, 558 (9th Cir. 2013) (district court did not err in denying leave to amend after plaintiff had already had multiple opportunities to amend and remedy identified deficiencies); *Burnett v. Faecher*, 507 F. App'x 657, 658 (9th Cir. 2013) (same).[4] For these reasons, the court **DENIES** Plaintiff leave to amend.

///

///

///

---

[4] As unpublished Ninth Circuit memorandum dispositions, the *Pfau* and *Burnett* decisions are not precedent, but may still be considered for their persuasive value. *See* Fed. R. App. P. 32.1; *see also Gladstone v. Travelers Prop. Cas. Co. (In re Garden Fresh Rests., LLC)*, No. 21-CV-1440 JLS (KSC), 2022 U.S. Dist. LEXIS 170238, at *10 n.4 (S.D. Cal. Sep. 20, 2022).

20cv1446 JM (BGS)

1

### CONCLUSION

2      For the reasons set forth above, the court **GRANTS** Defendant's Motion to

3   Dismiss Plaintiff's Fourth Amended Complaint **WITHOUT LEAVE TO AMEND.**  The

4   Clerk of Court is instructed to close this case.

5      **IT IS SO ORDERED.**

6   DATED: July 18, 2023

7                                              JEFFREY T. MILLER

8                                              United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21

20cv1446 JM (BGS)